# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

LARRY CARL IVES,

      Petitioner - Appellant,

v.

BOBBY BOONE, Warden,

      Respondent - Appellee.

No. 02-6397

## ORDER
Filed June 7, 2004

Before **TACHA**, Chief Judge, **SEYMOUR**, Circuit Judge, and **BRORBY**, Senior Circuit Judge.

This matter is before the court on appellant's petition for rehearing and suggestion for rehearing en banc. Upon consideration, the petition for rehearing is denied, but the panel amends its order and judgment filed on May 3, 2004.

The petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service as required by Fed. R. App. P. 35. As no member of the panel and no judge in regular active service on the court

requested that the court be polled, that petition is also denied.


                              Entered for the Court
                              Patrick Fisher, Clerk


                              By:
                                    Deputy Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LARRY CARL IVES,

     Petitioner-Appellant,

v.

BOBBY BOONE, Warden,

     Respondent-Appellee.

No. 02-6397
(W.D. Okla.)
(D.Ct. No. 98-CV-363-A)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **SEYMOUR**, Circuit Judge, and **BRORBY**, Senior Circuit Judge.

Larry Carl Ives, an Oklahoma state prisoner convicted of incest, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court granted a certificate of appealability with respect to all of the issues Mr. Ives raises. Exercising jurisdiction under 28 U.S.C. § 2253(c)(1)(A) and 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I. Facts and Prior Proceedings

In 1990, an Oklahoma state court tried Mr. Ives for rape, incest, and oral sodomy against his minor daughter. The victim testified Mr. Ives sexually abused her multiple times between 1986 and 1989. A jury convicted Mr. Ives of the rape and incest charges, but acquitted him of the forcible sodomy charge. At the jury's recommendation, the trial court subsequently sentenced Mr. Ives to forty years and eighty years imprisonment for the rape and incest charges, respectively. The court instructed the sentences would run concurrently.

Following his sentencing, Mr. Ives, with the assistance of new counsel, filed a direct appeal in the Oklahoma Court of Criminal Appeals, raising nine propositions of error. Mr. Ives also filed a "Supplemental Pro Se Brief of Appellant," alleging additional propositions of error. However, the Court of Criminal Appeals found the supplemental brief improperly filed, and ruled the issues raised therein waived on appeal. After considering the issues Mr. Ives properly raised, the Court of Criminal Appeals reversed his rape conviction on double jeopardy grounds, but denied relief on his incest conviction.

Mr. Ives then filed an application for post-conviction relief in the Oklahoma County District Court, alleging nine claims for relief. The district

court rejected eight of the nine claims because they "could have been raised on direct appeal." Additionally, the district court found no evidence to support Mr. Ives' ninth claim, an ineffective assistance of appellate counsel claim, and accordingly denied Mr. Ives' claim for post-conviction relief. The Oklahoma Court of Criminal Appeals affirmed the decision.

Pursuant to 28 U.S.C. § 2254, Mr. Ives next filed a habeas corpus petition in federal district court, asserting: (1) trial counsel was ineffective; (2) appellate counsel was ineffective; (3) his trial violated double jeopardy because he previously participated in a trial in the Juvenile Division of the Oklahoma County District Court; (4) the Oklahoma court erroneously enhanced his sentence based on two prior felony convictions; (5) the prosecution withheld exculpatory evidence and utilized witnesses who unlawfully vouched for the truthfulness of the alleged victim; (6) prosecutorial misconduct deprived him of a fair trial; (7) the trial court gave the jury faulty instruction; and (8) Oklahoma courts improperly denied him the opportunity to support claims in his application for post-conviction relief.

The federal district court, adopting the review and recommendation of a magistrate judge, initially denied relief on all but four issues. The district court ordered further briefing on:

> (1) whether the trial court improperly allowed expert testimony vouching for the truthfulness of the victim's testimony; (2) whether [Mr. Ives'] trial counsel was constitutionally ineffective for failing to call [Mr. Ives' ex-wife] as a defense witness; (3) whether [Mr. Ives'] trial counsel labored under a conflict of interest that adversely affected his performance; and (4) whether an evidentiary hearing [was] required regarding the conflict of interest issue.

Based on the additional briefing, the district court denied relief on Mr. Ives' claim that expert witnesses had improperly vouched for the credibility of the victim and returned the case to the magistrate judge for an evidentiary hearing on the ineffective assistance of trial counsel issues. Nine witnesses testified at the hearing. After weighing the evidence presented, the magistrate judge was not convinced Mr. Ives' trial counsel was ineffective and recommended the district court deny Mr. Ives' petition. The district court agreed.

Unsatisfied with the district court's decision, Mr. Ives requested the district court grant a certificate of appealability so he could appeal its decision. The district court granted a certificate of appealability with respect to five issues:

> (1) ineffective assistance of trial counsel due to a conflict of interest and failure to call [Mr. Ives' ex-wife] as a defense witness; (2) improper admission of testimony vouching for the victim's truthfulness; (3) unconstitutional suppression of exculpatory

-4-

evidence; (4) ineffective assistance of appellate counsel for failure to raise certain issues on direct appeal; and (5) [the Oklahoma courts'] procedural bar [of certain issues].

## II. Discussion

Mr. Ives now raises five issues on appeal from the district court's denial of his habeas petition: (1) ineffective assistance of trial counsel; (2) improper testimony by witnesses in vouching for the credibility of the victim; (3) improper suppression of exculpatory evidence by the prosecution; (4) improper procedural bar of a number of claims by the state courts; and (5) ineffective assistance of appellate counsel.

We review the district court's legal conclusions de novo and its factual findings for clear error. *Hill v. Reynolds*, 942 F.2d 1494, 1495 (10th Cir. 1991). With respect to issues adjudicated on the merits in the state courts, 28 U.S.C. § 2254(d) mandates we not grant the application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

If an issue was defaulted in state court on an "independent and adequate" state procedural ground, we will not address it unless Mr. Ives can establish "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## A. Ineffective Assistance of Trial Counsel

Mr. Ives first argues the district court erred in denying his ineffective assistance of trial counsel claim. Specifically, Mr. Ives alleges his trial counsel labored under an actual conflict of interest, which resulted in ineffective assistance. Additionally, Mr. Ives argues his counsel's performance, in itself, was constitutionally deficient.

Mr. Ives contends that because of a conflict of interest, his counsel chose not to call Mr. Ives' ex-wife (the mother of the victim) as a defense witness even though she had testified favorably for Mr. Ives in a prior juvenile court proceeding involving their parental rights over the victim. Specifically, Mr. Ives alleges his counsel chose to not call the witness at trial in order to protect the

business interests of counsel's alleged partner, who represented the ex-wife in the same juvenile court proceeding.

Prior to the criminal proceedings against Mr. Ives, both Mr. Ives and his ex-wife were involved in a juvenile court proceeding to determine whether their daughter was a deprived child. The juvenile court proceeding was initiated upon reports Mr. Ives sexually abused his daughter and his wife permitted the abuse. During the juvenile proceeding, the ex-wife testified she believed her daughter was lying about the alleged sexual abuse. Ultimately, the jury found the child was deprived. As a result, the Department of Human Services mandated the ex-wife complete a service plan if she wished to retain her parental rights.

Because the ex-wife's parental rights were still subject to the approval of the Department of Human Services at the time of his criminal trial, Mr. Ives argues his counsel did not call her as a witness so she could avoid any conflict with the Department of Human Services. Mr. Ives hypothesizes her testimony would have adversely affected her efforts to retain custody of their daughter because testimony stating she did not believe her daughter's accusations would have convinced the Department of Human Services she could not look after her daughter's interests and well-being.

Because claims of ineffective assistance of counsel primarily involve consideration of legal principles, they are subject to de novo review. *Miller v. Champion*, 161 F.3d 1249, 1254 (10th Cir. 1998). However, we review factual findings made by the district court in its determination of ineffectiveness claims only for clear error. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). To succeed in an ineffective assistance of counsel claim, a defendant usually must establish his or her counsel was constitutionally deficient and the deficiency was prejudicial. *Id.* at 687. However, in the context of a conflict of interest claim where, as here, the defendant did not object at trial, the defendant must demonstrate "'an actual conflict of interest adversely affected his lawyer's performance.'" *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). Only if a petitioner establishes an actual conflict affecting representation, will we presume prejudice. *Cuyler*, 446 U.S. at 350. Therefore, in this case, Mr. Ives must establish he and his ex-wife had adverse or inconsistent interests in the criminal case and his counsel was advancing her interests detrimentally to him.

A magistrate judge conducted an evidentiary hearing on this issue. Although Mr. Ives testified on his own behalf and presented witnesses to support the position his ex-wife had interests adverse or inconsistent with his interests in

this case, this testimony did not persuade the magistrate judge. Similarly, it does not persuade us. The magistrate judge found "the Department of Human Services (DHS) required the child's mother ... to complete a service plan.... The service plan consisted of things such as parenting skills classes and counseling.... If a parent does not complete the service plan, [the Department of Human Services] will presume that conditions in the home have not changed." The magistrate judge did not make any findings suggesting Mr. Ives' ex-wife's custody rights were in any way linked to testimony in Mr. Ives' criminal trial. To support his petition for habeas relief, Mr. Ives relies heavily on the testimony of his ex-wife's counsel, who testified that in general, if a wife testifies in favor of her husband when he has been charged with incest, this will negatively affect her chances in regaining custody of the child victim. The ex-wife's counsel, however, was asked twice on direct examination how the ex-wife's testimony in Mr. Ives' criminal trial might affect her. Although twice he had the opportunity, the ex-wife's counsel did not mention the possible loss of custody of the victim or potential criminal charges. In this circumstance, it is fair to conclude the ex-wife's counsel was not concerned her testimony might hurt her ability to gain custody of the victim.[1] The magistrate judge further found Mr. Ives' ex-wife was not

_____

[1] Additionally, as discussed later, the government presented testimony Mr. Ives' ex-wife no longer supported or believed Mr. Ives with respect to the child abuse

(continued...)

-9-

"vulnerable to criminal charges as a result of the events which were the subject of the juvenile proceeding." This finding is likewise supported by the transcript of the testimony from the ex-wife's counsel. Finally, the magistrate judge found Mr. Ives' attorney's testimony "believable" when he testified he had "no concerns" the ex-wife's testimony would harm her legal status in either juvenile or criminal court and that the ex-wife's legal status did not influence his decision not to call her as a witness. Based on these findings, as supported by the record, and like the magistrate judge, we conclude no actual conflict of interest existed between Mr. Ives and his ex-wife.

We turn now to Mr. Ives' general ineffective assistance of trial counsel claim. Mr. Ives argues that even if his trial counsel was not operating under an actual conflict of interest, counsel nevertheless was ineffective in failing to call Mr. Ives' ex-wife as a witness. We reject his argument.

As previously noted, to establish ineffective assistance of counsel, Mr. Ives must show his counsel's performance was constitutionally deficient and Mr. Ives

---

[1](...continued)
allegations. Because such testimony would not have adversely affected his ex-wife's chances to regain custody of her daughter, she would have no conflict in testifying at Mr. Ives' trial.

-10-

was prejudiced by the deficiency. *Strickland*, 466 U.S. at 694. To prove his counsel's performance was constitutionally deficient, Mr. Ives must demonstrate his counsel "committed serious errors in light of prevailing professional norms such that his legal representation fell below an objective standard of reasonableness." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) (quotation marks and citations omitted), *cert. denied*, 529 U.S. 1027 (2000).

At the evidentiary hearing, Mr. Ives' trial counsel explained his reason for not calling Mr. Ives' ex-wife to the stand. According to counsel, the ex-wife, although initially supportive of Mr. Ives, ceased all communication with Mr. Ives' counsel in the weeks before trial. Her counsel informed Mr. Ives' counsel she no longer supported or believed Mr. Ives with respect to the child abuse allegations. Because of this change in attitude, Mr. Ives' counsel testified he believed the ex-wife would be a dangerous witness and any aid she could have provided in undermining the victim's credibility would have been outweighed by her lack of support and probable hostility toward Mr. Ives on the stand.

Mr. Ives argues his trial counsel's "hearing testimony should not be considered at all, or [should be] taken with a very large grain of salt" because counsel "remained in the courtroom during the testimony of other witnesses, and

even discussed his testimony and the proposed testimony of [Mr. Ives' ex-wife] with her in the courthouse hallway." Mr. Ives believes this conduct violated a sequestration order. Consistent with Federal Rule of Evidence 615, the magistrate judged instructed "any witness who is present and will not be testifying first will need to remain outside the presence of the Court." The magistrate judge further instructed the witnesses "not to discuss [their] testimony with anybody other than the attorneys in the case." Mr. Ives believes his state court trial counsel violated both portions of the sequestration order.

Mr. Ives did not, however, raise the concerns he had with his trial counsel's presence or out-of-court conversations during the evidentiary hearing itself. Only after receiving the magistrate judge's report and recommendation did Mr. Ives ask the district court to strike his trial counsel's testimony. The district court concluded counsel had not violated the sequestration order. The district court further concluded that even if the counsel violated the sequestration order, Mr. Ives was not entitled to relief because he did not show he was prejudiced by the violation.

Assuming, without deciding, trial counsel's conduct violated the sequestration order, we conclude Mr. Ives is not entitled to relief. When a

witness violates a sequestration order, it is within the trial court's discretion to admit or exclude that witness' testimony. *United States v. McVeigh*, 106 F.3d 325, 330 n.3 (1997) (citing *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 980 (10th Cir. 1996)). The witness should generally not be disqualified unless allowing the testimony would result in "probable prejudice." *Okla. Publ'g*, 81 F.3d at 980 & n.2 (citing *Holder v. United States*, 150 U.S. 91, 92 (1893)). *See also United States v. Klinginsmith*, 25 F.3d 1507, 1511 (10th Cir. 1994). Mr. Ives suggests he was prejudiced because, after speaking with Mr. Ives' ex-wife, counsel testified the conversation reinforced his decision not to call her during the trial. We disagree. In this case, the magistrate judge knew Mr. Ives' trial counsel remained in the courtroom during other witnesses' testimony. Further, it is evident from counsel's testimony that he had spoken with Mr. Ives' ex-wife. Because both these facts were apparent to the magistrate judge, the judge could consider them in making credibility determinations and issuing findings. Under these circumstances, we will not strike Mr. Ives' trial counsel's testimony from the record.

After reviewing the hearing transcript, we, like the district court, conclude Mr. Ives' ex-wife was a "dangerous witness" for Mr. Ives. We therefore conclude counsel's ultimate decision not to call the ex-wife was a reasonable trial strategy.

Because counsel's decision was reasonable in light of the circumstances presented, Mr. Ives has not met his burden of establishing counsel's performance was constitutionally deficient. Thus, we do not consider whether counsel's performance was prejudicial.[2]

In sum, having concluded Mr. Ives has not met his burden in establishing ineffective assistance of trial counsel due to a conflict of interest or otherwise, we affirm the district court's decision denying Mr. Ives' ineffective assistance of trial counsel claim.

## B. Improper Witness Vouching

Mr. Ives next contends the Oklahoma state trial court improperly allowed several witnesses to vouch for the victim's credibility. Specifically, Mr. Ives points to statements made by two expert witnesses and two lay witnesses.

---

[2] Additionally, Mr. Ives argues his trial counsel was ineffective because counsel did not object to vouching testimony by a number of the state's expert and lay witnesses. However, because we conclude later Mr. Ives' vouching argument is without merit, *see infra* Part B, he cannot succeed on an ineffective assistance claim on these grounds.

Although state court determinations of state law evidentiary matters are generally unreviewable on habeas corpus review, *Martin v. Kaiser*, 907 F.2d 931, 934 (10th Cir. 1990), we will review such determinations where "they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights," *Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979). "Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor [we] must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (quotation marks, alterations, and citation omitted), *cert. denied*, 123 S. Ct. 1911 (2003). Reviewing the testimony of the witnesses with these principles in mind, we conclude Mr. Ives' trial was not fundamentally unfair.

1. Expert Witness Testimony

With respect to the expert testimony, Mr. Ives complains the testimony of Dr. Linda Worley and Dr. David Calenzani, who both treated the victim at various times, improperly bolstered the credibility of the victim's accusations concerning her father's abuse. Mr. Ives also contends the vouching testimony was improper because it allowed the expert witnesses "to relate hearsay statements" from the victim. Additionally, Mr. Ives believes the "vouching" portions of the experts' testimony do not meet the standard for scientific reliability established in *Daubert*

*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Upon review of the record, we conclude any alleged erroneous admissions during cross-examination were invited by defense counsel's questioning and did not render the trial proceedings fundamentally unfair.

Mr. Ives first argues portions of Dr. Worley's testimony prevented a fair trial. Mr. Ives' counsel's cross-examination of Dr. Worley proceeded as follows:

Q: Would it surprise you if you found out that [the victim] is not suicidal and was not suicidal on April 18th, 1989?

A: Would it surprise me?

Q: Yes.

A: I don't know how I would find that out, because I felt like she was. She was writing notes to her teacher.

Q: If you knew that she had testified in this courtroom earlier today that she was not suicidal and never intended to take her life, would you be surprised?

A: I don't know. I think that sometimes people change their stories when they find out what the consequences of saying they're suicidal are. Sometimes they say –

Q: In other words, again I'm not trying to put words in your mouth, you believe more of what she said on March 18th than what she might have said in the courtroom today? April 18th, excuse me.

A: I don't think that's the issue here. I mean–

Q: In making your diagnosis, Doctor, you rely on truthful information, don't you, accurate information.

A: Well, I rely on my interview with the patient.

Q: And you rely on accurate information. If you don't get accurate information you can't make a valid diagnosis, can you?

A: I can make a diagnosis by what information I get. I cannot say whether it's accurate or not.

Q: I understand that, but my point is, if somebody comes in, again, for whatever reason they may have, and tells you a bunch of inaccurate information and you make a diagnosis, that diagnosis may not be valid in reality.

A: In my experience I have – in my experience you can tell when somebody is not telling the truth. In my medical opinion, she was sincere when I saw her.

Immediately following this exchange, Mr. Ives' counsel moved for a mistrial. The trial court denied the request, concluding counsel had invited the error through his line of questioning. Now Mr. Ives argues this testimony impermissibly sustained the victim's credibility.

Mr. Ives similarly argues Dr. Calenzani also improperly vouched for the victim's credibility. Mr. Ives' counsel's cross-examination of Dr. Calenzani proceeded as follows:

Q: But when it comes right down to it, only they know whether they are in fact suicidal; is that right?

A: No.

Q: You wouldn't agree with that?

A: I think that – you see, there is where we need to make a psychiatric assessment. And the psychiatric assessment is a valid assessment that will come to the conclusion if you are suicidal or not. I think that – that is what I base my work on.

Q: So a psychiatric evaluation is based upon the data you have?

A: Yes.

Q: And only the data you have along with your experience and training?

A: Sure.

Q: Would you agree with Dr. Green's conclusion that there is evidence of disordered thinking, perceptual distortion and non-conventional attitudes, all of which suggests that [the victim] is not in good contact with reality?

A: I think that [the victim] was in full contact with reality. I think that all the information that she gave me there was a reason it was given. It was a time of enormous turmoil and I fully believe her. That is why I believe.

Mr. Ives' counsel did not object to this testimony.

Oklahoma courts follow the "well established principle that a defendant may not complain of error which he has invited, and that reversal cannot be predicated upon such error." *Pierce v. State*, 786 P.2d 1255, 1259 (Okla. Crim. App. 1990). *See also Gundy v. United States*, 728 F.2d 484, 488 (10th Cir. 1984) (holding "an appellant may not complain on appeal of errors which he himself induced or invited"). This invited error doctrine applies when the defendant

-18-

elicits otherwise inadmissible evidence from a witness during cross-examination. *See Washington v. State*, 989 P.2d 960, 973 (Okla. Crim. App. 1999). We have previously denied habeas relief when a defendant's request for relief is based on an error he invited. *See Parker v. Champion*, 148 F.3d 1219, 1221-22 (10th Cir. 1998), *cert. denied*, 525 U.S. 1151 (1999).

In the exchanges quoted above, both experts responded reasonably to Mr. Ives' counsel's questions. Because Mr. Ives' querying of the doctors on their respective abilities to diagnose patients and on their bases for determining the mental state of their patients instigated the allegedly improper responses, the court's admission of the answers did not affect the fundamental fairness[3] of the trial. Thus, Mr. Ives is not entitled to habeas relief on this ground.

## 2. Lay Witness Testimony

---

[3] We also note the expert testimony was directed at whether the victim's reports of suicidal thoughts were truthful rather than whether her allegations of sexual abuse were truthful. Further, the trial judge instructed the jury: "You are not required to surrender your own judgment to that of any person testifying as an expert, or to give controlling effect to the opinion of an expert, for the testimony of an expert like that of any other witness is to be received by you and given such weight and value as you deem it is entitled to receive."

Mr. Ives also argues the improper vouching testimony of two lay witnesses, Robert Tunnell[4] and Martha Roller, deprived him of a fundamentally fair trial. Oklahoma's rule on the admissibility of lay witness testimony corresponds to the federal rule. Both allow a lay witness to testify "in the form of opinions and inferences" so long as the testimony is "(1) [r]ationally based on the perception of the witness; (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge." Okla. Stat. Ann. tit. 12, § 2701 (1993 & Supp. 2004); Fed. R. Evid. 701. Under this rule "courts have been very liberal in admitting witnesses' testimony as to another's state of mind if the witness has had sufficient opportunity to observe the accused so as to draw a rational conclusion." *United States v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir. 1985).

Keeping these rules in mind, we turn first to Officer Robert Tunnell's testimony. During direct examination, Officer Tunnell, a state witness, testified concerning his interactions with the victim after being called to investigate suspected abuse:

---

[4] Although Mr. Ives classifies Mr. Tunnell as an expert witness, in fact, Mr. Tunnell testified as a lay witness, only recounting his time with the victim during her examination by a social worker.

Q: Officer, during the hours where she was refusing to talk to anybody to confide in them while she was in your presence about what was bothering her, can you tell us if you noticed anything unusual about her mental state then?

A: She was very agitated, very distraught and made the statement that she was scared.

Q: Scared of what?

A: At that time she didn't make a statement of what she was scared of.

Q: Did she say something about somebody?

A: She made reference to her father.

Q: What reference?

A: At this time

Q: Yes.

A: At this point and time she did not make reference to her father.

Q: You said she made a – with regard to her state of mind and her father at some point that evening while she was in your presence, did she make a statement?

A: During that evening?

Q: Yes, sir.

A: Okay. When we had transported her from Children's to another facility where she would be staying in front of another doctor, she stated that she was afraid of her father and she made the statement in front of me that, "You don't know what he will do. He will go to any lengths to get to me."

-21-

Q: And based on your experience, the number of years that you've been a police officer and the number of people that you've talked to in stress-filled situations, did she appear to be sincere to you when she was speaking of this fear of her father?

A: Very.

Mr. Ives' counsel did not object to this testimony.

In this exchange, Officer Tunnell is testifying to his opinion of the victim's state of mind – fearful – rather than vouching for the credibility of her statements concerning the sexual abuse by her father. Additionally, the testimony is relevant to the issue of Mr. Ives' abuse and helpful in understanding the victim's communications during the investigations of the abuse. This testimony was proper because Officer Tunnell spent several hours with the victim and had ample opportunity to observe her demeanor. Furthermore, if there was any possible error, it is difficult to see how Officer Tunnell's one-word answer deprived Mr. Ives of a fair trial. *See United States v. Chiquito*, 106 F.3d 311, 314-15 (10th Cir.) (holding any possible error arising from lay witness testimony that the victim did not give any indication she was lying was harmless), *cert. denied*, 520 U.S. 1248 (1997).

We turn now to the testimony of the victim's teacher, Martha Roller, whom the victim confided in regarding the abuse. Specifically, Mr. Ives believes Ms.

Roller impermissibly testified the victim "had a 'good' reputation for truth telling, related statements [the victim] had made about the alleged abuse, said she 'believed' the victim, and waited to report the allegation to the authorities until she was 'sure of it.'" Ms. Roller's testimony about why she waited to report the allegations came in response to cross-examination questioning from Mr. Ives' counsel:

Q. Did you report [the victim's allegations] to the Department of Human Services?

A. Not at that time.

Q. Did you report it to anybody in school?

A. The counsel – the social worker and the counselors.

Q. Are you aware of the statute that requires teachers or doctors or anybody who comes in contact with children who are making these allegations to report it to the appropriate agencies?

A. I am, but I had to make sure that I knew what I was talking about.

Q. You weren't sure, were you?

A. Well, no when a student just tells you out – at that point. No, not at first.

Like the experts' testimony previously discussed, Ms. Roller's answers were invited by Mr. Ives' counsel's questions. *See Pierce*, 786 P.2d at 1259; *Gundy*, 728 F.2d at 488. Therefore, we conclude Ms. Roller's answers did not affect the fundamental fairness of Mr. Ives' trial. *See Parker*, 148 F.3d at 1221-22.

-23-

As to Ms. Roller's other statements Mr. Ives claims tainted his trial, we do not have the portions of the record containing this testimony. However, accepting Mr. Ives' recitation of testimony as correct, we conclude these minute and isolated statements did not affect the fundamental fairness of Mr. Ives' trial. *See Chiquito*, 106 F.3d at 314-15.

Having concluded these witnesses' testimony did not render Mr. Ives' trial fundamentally unfair, we now proceed to Mr. Ives' argument the district court erred in concluding the prosecution withheld exculpatory evidence from Mr. Ives.

### C. Improper Suppression of Exculpatory Evidence

Mr. Ives argues he "was denied his Fourteenth Amendment due process rights because the prosecutor suppressed material exculpatory evidence." The allegedly exculpatory evidence consists of (1) a medical report allegedly stating that the victim's hymen was intact in 1987, and (2) a letter received by Child Welfare Services after the trial from a mental health care professional who had examined the victim. We review each document in turn.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). We determine materiality by "whether there is a reasonable probability that the outcome of [the trial] ... would have been different had the State disclosed this information earlier." *Knighton v. Mullin*, 293 F.3d 1165, 1172-73 (10th Cir. 2002), *cert. denied*, 538 U.S. 930 (2003).

The first document identified by Mr. Ives is a medical report prepared following a physical examination of the victim in response to her first claims of abuse against Mr. Ives in 1987. Mr. Ives argues the report conclusively establishes he could not have had sexual intercourse with the victim prior to 1987 because the report states the victim's hymen was intact at the time of the examination. Thus, Mr. Ives argues the report is exculpatory because it renders impossible the victim's allegations Mr. Ives had sexually abused her from 1986 to 1987 and casts "grave[] doubt" on the victim's other allegations.

Mr. Ives' description of the medical report is inaccurate. Instead of conclusively reporting the victim's hymen was intact, the report simply states the victim's "[h]ymen was thought to be intact." Further, immediately preceding this uncertain remark, the medical report contains a section entitled "Past Medical History." This section notes the victim was examined in June 1985 and concludes that at that time "her [h]ymen was not intact." The report also states that at the

1987 exam the victim had "red, purple blotchy bruises on her inner thighs." In looking at the information contained in the entire report, the report does little to damage the victim's credibility and does not conclusively establish the victim had not engaged in sexual intercourse prior to the 1987 examination. Consequently, Mr. Ives' *Brady* claim with respect to the medical report is without merit because the report is neither exculpatory nor material.

The second piece of evidence Mr. Ives claims the prosecution wrongfully withheld is a letter written by Dr. Carmen Warren-Chioco after the conclusion of the criminal trial. The letter Dr. Warren-Chioco sent to Child Welfare Services expressed her concern for the victim's "current drug abuse, manipulativeness, oppositional defiance and continuing borderline pathology." Mr. Ives argues the letter is material because it establishes the victim's erratic behavior was not the result of post-traumatic stress disorder caused by sexual abuse, but the result of her oppositional defiance disorder. Although Mr. Ives concedes the prosecution had no obligation to turn over this letter because it was written after the conclusion of the trial, Mr. Ives believes "because Child Welfare Services was closely involved in the criminal case and the letter was written immediately after the trial, the prosecution had to have known that its own agents, in an ongoing fashion, were aware of [the victim's] numerous, impeaching mental impairments."

-26-

After reviewing the entire letter, we, like the magistrate judge and the district court, conclude that nothing in the letter shows the prosecution or its agents had any information about the victim's alleged oppositional defiance disorder prior to or during trial. Having concluded the prosecution did not withhold exculpatory evidence, we deny Mr. Ives' request for habeas relief based on *Brady v. Maryland*.

### D. Procedural Bar

Mr. Ives next argues the federal district court erred in concluding a number of his claims[5] were barred from habeas review. The district court concluded his claims were barred because the Oklahoma Court of Criminal Appeals held the claims were procedurally barred. The Court of Criminal Appeals denied Mr. Ives' petition for post-conviction relief on these claims because Mr. Ives had not raised them on direct appeal. *See Fisher v. State*, 845 P.2d 1272, 1274 (Okla. Crim. App. 1992) ("Matters which have or could have been raised on direct appeal but were not will not be considered in post-conviction proceedings."), *cert. denied*,

---

[5] These claims include a double jeopardy claim, an erroneous sentence enhancement claim, and an improper jury instruction claim.

509 U.S. 911 (1993). Mr. Ives argues we should nevertheless consider these claims because his appellate counsel was ineffective.

Before we will address claims procedurally barred by "independent and adequate" state grounds, Mr. Ives must demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Mr. Ives argues ineffective assistance of appellate counsel as cause for his default on direct appeal. Mr. Ives believes his appellate counsel was ineffective for failing to assert the identical claims the state court held were procedurally barred from being asserted in his request for post-conviction relief. In the alternative, Mr. Ives argues our failure to consider these claims would result in a miscarriage of justice because he is innocent and his claims are meritorious.

A petitioner may, as Mr. Ives seeks to do, "establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment." *Banks v. Reynolds*, 54 F.3d 1508, 1514 (10th Cir. 1995). To show ineffective assistance of appellate counsel, a petitioner must "establish that appellate counsel was 'objectively unreasonable' in failing to

assert [a] claim on direct appeal, and that there is a reasonable probability that, but for counsel's failure to raise the issue, [the petitioner] would have prevailed in challenging his ... conviction[] on direct appeal." *Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002), *cert. denied*, 537 U.S. 1173 (2003). However, counsel "need not and should not raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). We review the merits of the omitted issues to evaluate performance of counsel. *Upchurch v. Bruce*, 333 F.3d 1158, 1164-65 (10th Cir.), *cert. denied*, 124 S. Ct. 839 (2003).

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

*Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003).

In this case, Mr. Ives argues his appellate counsel was ineffective because he failed to raise three claims: (1) double jeopardy; (2) erroneous use of a foreign conviction for sentence enhancement purposes; and (3) improper jury instructions. In order to determine whether Mr. Ives can show cause for his procedural default

-29-

via ineffective assistance of appellate counsel, we review the merits of the omitted claims and determine whether counsel was ineffective for failing to appeal these claims.

## 1. Double Jeopardy

Mr. Ives first argues his appellate counsel was ineffective for failing to argue Mr. Ives' conviction for incest violated the doctrine of collateral estoppel and the Fifth Amendment's protection against double jeopardy. The Double Jeopardy Clause, applied to the states through the Fourteenth Amendment, protects defendants from further prosecutions after a conviction or acquittal, and from multiple punishments for the same offense. *See* U.S. Const. amend. V, XIV; *Anderson v. Mullin*, 327 F.3d 1148, 1153 (10th Cir.), *cert. denied*, 124 S. Ct. 305 (2003). "[T]he Double Jeopardy Clause incorporates the doctrine of collateral estoppel in criminal proceedings." *Ichiro v. Farley*, 510 U.S. 222, 232 (1994). *See also United States v. Gaillardia-Mendez*, 150 F.3d 1240, 1242 (10th Cir. 1998). "Collateral estoppel, or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Ichiro,* 510 U.S. at 232 (quoting *Ashes v. Swenson*, 397 U.S. 436, 443 (1970)).

Here, Mr. Ives argues his criminal prosecution and conviction for incest amounts to double jeopardy because he previously participated in a state deprived child hearing concerning the same allegations prompting the criminal prosecution. Under Oklahoma law, a "deprived child" is a child "who does not have the proper parental care or guardianship or whose home is an unfit place for the child by reason of neglect, abuse, cruelty, or depravity on the part of the child's parents, legal guardian, or other person responsible for the child's health or welfare." Okla. Stat. Ann. tit. 10, § 7001-1.3(A)(14)(b) (1998 & Supp. 2004).[6] Prior to Mr. Ives' trial and conviction for incest, the district attorney filed a petition in the Juvenile Division of the Oklahoma County District Court alleging the victim was deprived because Mr. Ives had sexually and emotionally abused her. The juvenile court summoned Mr. Ives to appear at the hearing and heard testimony concerning Mr. Ives' alleged sexual abuse of the victim. Ultimately, a jury concluded the victim was "deprived as to the father." Mr. Ives now argues the doctrines of collateral estoppel and double jeopardy protect him from further prosecution and punishment for the abuse alleged in the juvenile proceeding.

---

[6] At the time of the deprived child hearing for the victim in this case, the statute did not mention "abuse," but instead said a child was deprived if the "home [was] an unfit place for the child by reason of neglect, cruelty, or depravity." Okla. Stat. Ann. tit. 10, § 1101(4) (1987).

We conclude Mr. Ives' argument is without merit because the juvenile proceeding was not criminal in nature. The Supreme Court instructs that "the [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99 (1997). *See also Simpson v. Bouker*, 249 F.3d 1204, 1212 (10th Cir. 2001). "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Hudson*, 522 U.S. at 99. We employ "a two-part test for determining whether a particular punishment is civil or criminal." *Simpson*, 249 F.3d at 1212. "First, we must determine whether the legislature 'indicated either expressly or impliedly a preference for one label or the other.'" *Id.* (quoting *Hudson*, 522 U.S. at 99). Second, "[e]ven in those cases where the legislature has indicated an intention to establish a civil penalty, we ... inquire[] further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 99 (quotation marks, citations, and alterations omitted).

Oklahoma courts, in discussing the state legislature's intention, have held deprived child hearings are civil in nature. *See In re H.J.*, 854 P.2d 381, 383 (Okla. App. 1993). *C.f. In re K.W.*, 10 P.3d 244, 245-46 (Okla. Civ. App. 2000) (treating a deprived child hearing as a civil case). According to the Oklahoma

Court of Appeals, the goals of the juvenile court proceeding involving parental rights are "achieving the correction of parental behavior and protection of ... neglected youngsters." *In re H.J.,* 854 P.2d at 383. This holding is consistent with the Oklahoma Statutes which, at the time of the deprived child hearing involving the victim, emphasized "the public policy of [Oklahoma] is to assure adequate and appropriate care and treatment for any child." Okla. Stat. Ann. tit. 10, § 1129 (1987).[7] Indeed, at the time of the deprived child hearing, Oklahoma law specifically provided that "cases of children shall be heard separately from the trial of cases against adults." Okla. Stat. Ann. tit. 10, § 1111 (1987).[8] Furthermore, appeals from district court decisions in deprived child hearings are handled by the Oklahoma Court of Civil Appeals rather than the Oklahoma Court of Criminal Appeals. *See, e.g., In re J.K.,* 62 P.3d 807 (Okla. Civ. App. 2002); *In re K.W.*, 10 P.3d 244. Based on this, we conclude the Oklahoma legislature intended deprived child hearings to be civil in nature.

---

[7] The statute now provides: "The paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health and safety and the best interests of the child." Okla. Stat. Ann. tit. 10, § 7001-1.2 (1998 & Supp. 2004).

[8] The statute now reads: "All cases of deprived children shall be heard separately from the trial of cases against adults." Okla. Stat. Ann. tit. 10, § 7003-4.1 (1998 & Supp. 2004).

Because the statutory scheme allowing for deprived child hearings is civil on its face, we must presume the hearing was civil unless Mr. Ives provides "the clearest proof" the statutory scheme is so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty. *Hudson*, 522 U.S. at 99. In evaluating whether Mr. Ives has provided this clear proof, we look to several useful guideposts:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99-100 (quotation marks and citation omitted). Mr. Ives has not made any specific arguments with respect to these or other potentially relevant factors. Our own review of the statutory scheme convinces us the deprived child hearing was not so punitive in effect as to transform it into a criminal proceeding.

Mr. Ives nevertheless argues that an Oklahoma Court of Criminal Appeals case, *Smith v. State*, 46 P.3d 136 (Okla. Crim. App. 2002), holds "double jeopardy and collateral estoppel may bar a criminal prosecution based on the same allegations raised in a previous deprived child/parental rights termination

-34-

proceeding." We do not think the reasoning in *Smith* prevents Mr. Ives' criminal prosecution.

In *Smith*, the defendant, Mr. Smith, was first involved in a deprived child proceeding. *Id.* at 138. In that proceeding, the jury found Mr. Smith "had not committed sexual abuse that was heinous or shocking and had not committed sexual abuse that caused severe harm or injury." *Id.* (quotation marks omitted). The state then instituted a criminal proceeding. *Id.* at 137. In the criminal proceeding, a jury convicted Mr. Smith of sexual abuse of a minor. *Id.* On appeal, Mr. Smith argued collateral estoppel prevented the criminal jury from deciding whether he had committed sexual abuse because the jury in the deprived child hearing concluded he had not committed the abuse. In deciding the issue, the Oklahoma Court of Criminal Appeals noted that "[c]ollateral estoppel may be applicable where the first cause of action was civil and the second was criminal." *Id.* at 135; *see also Yates v. United States*, 354 U.S. 298, 335-36 (1957); *United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992). The theory is that if the government is unable to meet the lower burden of proof in a civil case, the government would not be able to meet the higher burden of proof in a subsequent criminal case. *See Smith*, 46 P.3d at 138. Under this theory, "[a] specific jury finding on an ultimate issue in favor of the defendant would preclude a

subsequent criminal prosecution on the same issue or issues." *Id.* The Oklahoma court, however, determined Mr. Smith was not protected from subsequent prosecution because the language of the jury verdict in the deprived child hearing required sexual abuse that was "heinous or shocking," a more serious accusation than the elements required for criminal sexual abuse of a child. *Id.*

The reasoning of the *Smith* court is inapplicable here because the deprived child hearing did not result in "[a] specific jury finding on an ultimate issue *in favor* of [Mr. Ives]." *Id.* (emphasis added). In a deprived child hearing, a jury only needs "clear and convincing evidence" in order to find a child is deprived. *See In re C.G.*, 637 P.2d 66, 70-71 (Okla. 1981). In contrast, Mr. Ives' criminal conviction required proof "beyond a reasonable doubt." *See Huskey v. State*, 989 P.2d 1, 5 (Okla. Crim. App. 1999). Therefore, the civil jury's finding that the victim was deprived would not automatically establish Mr. Ives' guilt in the criminal case. The differences in proof standards preclude application of the collateral estoppel doctrine in this case. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362 (1984).[9]

---

[9] Indeed, it unlikely Mr. Ives would have wanted the deprived child hearing to conclusively establish he had abused his daughter for criminal purposes. *See United States v. Killough*, 848 F.2d 1523, 1528 (11th Cir. 1988) (holding that when collateral estoppel prevented re-litigation of an issue in a later proceeding,

(continued...)

Because there is no merit to Mr. Ives' double jeopardy and collateral estoppel claim, his appellate counsel was not ineffective for failing to raise the claim on direct appeal. Therefore, Mr. Ives cannot establish cause for his procedural default of this claim.

Furthermore, our conclusion that Mr. Ives' double jeopardy and collateral estoppel claim is without merit leads us to conclude no miscarriage of justice will result from our decision not to excuse Mr. Ives' procedural default. *See Coleman*, 501 U.S. at 750.

## 2. Erroneous Sentence Enhancement

Mr. Ives next argues his appellate counsel was ineffective for not appealing the court's use of his prior federal conviction for possessing an unregistered firearm under 26 U.S.C. § 5861(d) to enhance the requisite minimum for his sentence. Mr. Ives does not dispute the fact he pled guilty to, and was convicted of, "possessing firearms with no serial number and not registered to him, in violation of 26 U.S.C. § 5861(d)." Instead, Mr. Ives contends the firearms conviction should not lead to enhancement because the "offense – based solely on

---

[9](...continued)
the finding in the first proceeding conclusively established the issue in the second proceeding).

-37-

powers reserved to the federal government – has no analogue in the Oklahoma criminal statutes." Consequently, Mr. Ives believes the court should have sentenced him based on a minimum term of ten years incarceration rather than a minimum term of twenty years incarceration.

At the time the state trial court sentenced Mr. Ives, Oklahoma law required "every person who, having been twice convicted of felony offenses, commits a third, or thereafter, felony offense within ten (10) years of the date following the completion of the execution of the sentence, shall be punished by imprisonment in the State Penitentiary for a term of not less than twenty (20) years." Okla. Stat. Ann. tit. 21, § 51(B) (1983 & Supp. 1990) (current version available at Okla Stat. Ann. tit. 21, § 51.1(B) (2002)). In contrast, a person convicted of only one previous "offense punishable by imprisonment in the State Penitentiary" was subject to a ten-year minimum sentence if the subsequent offense would normally qualify for a sentence exceeding five years. *See* Okla. Stat. Ann. tit. 21, § 51(A) (1983 & Supp. 1990) (current version at Okla. Stat. Ann. tit. 21, § 51.1 (2002)).

Oklahoma law further explains what convictions its courts may use for enhancement purposes.

> Every person who has been convicted in any other state, government
> or country of an offense which, if committed within this state, would

be punishable by the laws of this state by imprisonment in the penitentiary, is punishable for any subsequent crime committed within this state ... to the same extent as if such first conviction had taken place in a court of this state.

Okla. Stat. Ann. tit. 21, § 54 (2002).  When analyzing whether a foreign conviction can be used to enhance a defendant's minimum sentence, Oklahoma courts ask "whether the allegation in the [foreign] indictment ..., and the admitted guilt thereof, constitute a felony, punishable by a term in the penitentiary, under the statutes of Oklahoma." *Tice v. State*, 283 P.2d 872, 876 (Okla. Crim. App. 1955). Because the emphasis is on the specific charges to which the defendant pled guilty, Oklahoma need not have an offense identical to the foreign statute; it is sufficient if the defendant pled guilty to an indictment describing conduct constituting a felony under Oklahoma law.  *See id.* at 876-77.

With this understanding, we now return to Mr. Ives contention that his federal firearm conviction should not have been used to enhance his sentence.  Mr. Ives insists that "since 26 U.S.C. section 5861(d) is based solely on powers reserved to the federal government, there is no analogous Oklahoma crime."  Mr. Ives' argument fails because, as noted above, Oklahoma requires a court look at the conduct to which Mr. Ives pled guilty in determining whether the conduct was a crime under Oklahoma law rather than spend time comparing the federal statute to various Oklahoma laws.  *See Tice*, 283 P.2d at 876-77.  Under this rubric,

Oklahoma courts have held federal convictions may enhance the punishment for subsequent crimes even when the prior federal conviction was under a statute based on powers reserved to the federal government. *See, e.g., Webb v. State*, 732 P.2d 478, 480 (1987) (holding federal conviction for making a false statement to obtain a weapon, 18 U.S.C. § 922(a)(6), could be used to enhance sentence for subsequent conviction); *Lee v. State*, 576 P.2d 770, 771-72 (Okla. Crim. App. 1978) (holding federal conviction for interstate transportation of a stolen motor vehicle, 18 U.S.C. § 2312, could be used to enhance sentence for subsequent conviction). Thus, our examination must involve the indictment rather than simply the federal statute itself.

Our examination of the federal indictment, however, is impossible because the indictment is not included in the record. Without the indictment, we cannot tell which, if any, of the numerous Oklahoma laws involving firearms in effect at the time of Mr. Ives' federal conviction[10] may have applied to the conduct to which Mr. Ives pled guilty. We must therefore conclude Mr. Ives has not met his

---

[10] *See, e.g.*, Okla. Stat. Ann. tit. 21, § 1283 (1983) (felon in possession of a firearm) (current version available at Okla. Stat. Ann. tit. 21, § 1283 (2002)); Okla. Stat. Ann. tit. 21, § 1289.18 (1983 & Supp. 2000) (possession of a sawed-off shotgun or rifle) (current version available at Okla. Stat. Ann. tit. 21, § 1289.18 (2002)).

burden of showing his appellate counsel was ineffective. Likewise, Mr. Ives has not shown a miscarriage of justice will occur unless we review his claim.

### 3. Improper Jury Instructions

Third, Mr. Ives argues his appellate counsel should have argued the trial court erred in failing to instruct the jury members that they must all agree on a specific act or acts of abuse. Mr. Ives argues this claim is meritorious because, in Oklahoma, incest is not a continuing offense. Mr. Ives therefore argues the prosecution was required to "make an election of a specific act or acts it wish[ed] to prove beyond a reasonable doubt." Because the court did not so instruct the jury members, Mr. Ives believes some jurors may have believed one instance of abuse while other jurors believed a separate instance of abuse. Mr Ives contends "the jury could [have reached] a non-unanimous verdict of guilt without agreeing on which act had been proven beyond a reasonable doubt, thus diluting the burden of proof and denying [Mr. Ives] his right to a unanimous verdict."

Although Oklahoma law generally requires a conviction be based on a single act, *Cody v. State*, 361 P.2d 307 (Okla. Crim. App. 1961), Oklahoma courts have carved an exception to this rule in child abuse cases where the abused child is "'under the exclusive domination of one parent for a definite and certain period of

time and submits to sexual acts at that parent's demand.'" *Gilson v. State*, 8 P.3d 883, 899 (Okla. Crim. App. 2000) (quoting *Huddleston v. State*, 695 P.2d 8, 10-11 (Okla. Crim. App. 1985)), *cert. denied*, 532 U.S. 962 (2001).  Under these circumstances, separate acts of abuse may be treated as one transaction.  *Id.*

Mr. Ives argues the exception in *Gilson* and *Huddleston* does not apply in his case because the victim was never under his exclusive custody or domination. He points out that he did not live with the victim and her mother, and claims that after 1987 he was never alone with the victim.  Consequently, he argues the victim "was under the custody and control of her mother, not [Mr.] Ives."

We conclude Mr. Ives' argument is without merit because there were sufficient facts to support treating the abuse as a continuing offense.  Mr. Ives is the victim's biological father.  The victim testified Mr. Ives sometimes stayed in her home.  When he was there, Mr. Ives had control over the victim when her mother was asleep, in the shower, or at work.  The victim also testified Mr. Ives abused her at his own house when the two of them were alone there in the afternoon after the victim had finished school for the day.

Based on these allegations we conclude the prosecution was entitled to treat the abuse allegations as a continuing offense. The district court did not err in failing to instruct the jury members they must agree on a specific act or acts of abuse. Mr. Ives' appellate counsel was not ineffective for failing to raise such an argument on direct appeal. Mr. Ives has not demonstrated cause for procedurally defaulting this claim. Further, because the claim is without merit, no miscarriage of justice will result from our decision not to excuse Mr. Ives' procedural default. *See Coleman*, 501 U.S. at 750.

In sum, we conclude Mr. Ives is not entitled to relief on his due process and collateral estoppel claim, his erroneous sentence enhancement claim, or his jury instruction claim. He has not proven cause for procedurally defaulting these claims, because he has not shown his appellate counsel was ineffective for failing to raise them on direct appeal. In addition, we conclude no miscarriage of justice will result from our refusal to overlook Mr. Ives' procedural default of these claims.

## E. Ineffective Assistance of Appellate Counsel

Mr. Ives has two more general claims that his appellate counsel was ineffective. He believes his appellate counsel (1) improperly submitted his

supplemental pro se pleadings which were then barred by the state court of appeals due to this error, and (2) was generally unfit to practice law. These claims are unpersuasive.

As discussed earlier, in the order to establish ineffective assistance, Mr. Ives must show his counsel's performance was constitutionally deficient and he was prejudiced by this deficiency. *Strickland*, 466 U.S. at 687.

We first consider Mr. Ives' claim his trial counsel was ineffective for failing to properly file Mr. Ives' pro se supplemental brief and materials. Although these materials apparently raised several issues, in this request for habeas relief Mr. Ives focuses solely on his *Brady* claim, which we discussed in Part C of this opinion. Because we have already concluded Mr. Ives' *Brady* claim is without merit, he cannot satisfy the second prong of the *Strickland* test: that he was prejudiced by his counsel's failure to properly file these pleadings and by the Oklahoma Court of Criminal Appeals' subsequent refusal to review the meritless claim.[11]

---

[11] Alternatively, Mr. Ives argues appellate counsel was ineffective for failing to include the *Brady* claim in the brief he filed. This argument, likewise, fails because the *Brady* claim is meritless.

-44-

Second, we address Mr. Ives' claim his appellate counsel was ineffective because counsel was generally unfit to practice law. As evidence his counsel was ineffective, Mr. Ives points to the fact that prior to his appeal, his counsel was suspended from practicing law for alcohol and substance abuse. Following Mr. Ives' appeal, his appellate counsel was again suspended for continued alcohol and substance abuse, as well as for conversion of client funds. Based on these disciplinary actions, Mr. Ives believes "at the time appellate counsel was representing Mr. Ives, [counsel] had severe alcohol and substance abuse problems." We are unpersuaded by Mr. Ives' argument.

The Supreme Court has instructed us that "[u]nder the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." *Nix v. Whiteside*, 475 U.S. 157, 165 (1986). The Supreme Court cautions that

> [w]hen examining attorney conduct, [we] must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct and thereby intrude into the state's proper authority to define and apply the standards of professional conduct applicable to those it admits to practice in its courts.

*Id.* Given these instructions, we are not free to grant Mr. Ives habeas relief simply because his appellate counsel was disciplined by the Oklahoma State Bar. *See United States v. Stevens*, 978 F.2d 565, 567 (10th Cir. 1992) (holding legal

assistance provided by counsel disbarred prior to trial was not per se ineffective). Similarly, we will not conclude Mr. Ives' appellate counsel was ineffective based solely on Mr. Ives' allegations that counsel suffered from alcoholism and personal problems while representing Mr. Ives. *See Frye v. Lee*, 235 F.3d 897, 907 (4th Cir. 2000), *cert. denied*, 533 U.S. 960 (2001); *Bodin v. Calderon*, 59 F.3d 815, 838 (9th Cir. 1995); *Caballero v. Keane,* 42 F.3d 738, 740 (2d Cir. 1994); *Berry v. King*, 765 F.2d 451, 454 (5th Cir. 1985); *Young v. Zant*, 727 F.2d 1489, 1492-93 (11th Cir. 1984); *Fowler v. Parratt*, 682 F.2d 746, 750 (8th Cir. 1982). Instead, Mr. Ives must show the alcoholism and personal problems had "'some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense.'" *United States v. Winkle*, 722 F.2d 605, 609 (10th Cir. 1983) (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1981)).

Mr. Ives argues his counsel's problems caused counsel to "omit[] meritorious issues for no valid strategic reason whatever." Because Mr. Ives does not elaborate, we assume he is simply referring to the alleged deficiencies we addressed in Parts D and E of this opinion. As we explained, each of these claims is meritless. Consequently, Mr. Ives is not entitled to relief based on the allegation appellate counsel was generally unfit to practice law.

In sum, we conclude Mr. Ives has failed to establish the district court erred in denying his petition for habeas relief based on his claims of (1) ineffective assistance of trial counsel; (2) improper testimony by witnesses in vouching for the victim's credibility; (3) improper suppression of exculpatory evidence by the prosecution; (4) the improper procedural bar of a number of claims by the state courts; and (5) ineffective assistance of appellate counsel.

The district court properly denied the petition for a writ of habeas corpus. The judgment of the district court is **AFFIRMED**.

**Entered by the Court:**


**WADE BRORBY**
United States Circuit Judge