**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 28 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

BILL CHIQUITO, JR.,

      Defendant-Appellant.

No. 96-2039

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-94-731)

---

Roger A. Finzel, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Rhonda P. Backinoff, Assistant U.S. Attorney (John J. Kelly, U.S. Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **ANDERSON**, Circuit Judge, **MCWILLIAMS**, Senior Circuit Judge, and **WEIS**, Senior Circuit Judge.[*]

---

**McWILLIAMS,** Senior Circuit Judge.

---

[*]Honorable Joseph F. Weis, Jr., Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

On December 8, 1994, Bill Chiquito, Jr. was charged in the first count of a four count indictment with having sexual contact, on or between about April 1, 1992 and September 30, 1992, with Jane Doe, an Indian female under the age of 12 years, within the exterior boundaries of the Navajo Indian Reservation, in Indian Country, in McKinley County, in the State of New Mexico, in violation of 18 U.S.C. § 1153, 18 U.S.C. § 2244(a)(1), 18 U.S.C. § 2241(c) and 18 U.S.C. § 2245(3).

In count 2 of the indictment, Chiquito was charged with having sexual contact on or between about April 1, 1992 and September 30, 1992, with Jane Doe, an Indian female under the age of 12 years, within the exterior boundaries of the Navajo Indian Reservation, in Indian Country, in McKinley County, in the State of New Mexico, in violation of 18 U.S.C. § 1153, 18 U.S.C. § 2244(a)(1), 18 U.S.C. § 2241(c) and 18 U.S.C. § 2245(3).

In count 3, Chiquito was charged with engaging in a sexual act, on or between about April 1, 1992 and September 30, 1992, with Jane Doe, an Indian female under the age of 12 years, within the exterior boundaries of the Navajo Indian Reservation, in Indian Country, in McKinley County, in the State of New Mexico, in violation of 18 U.S.C. § 1153, 18 U.S.C. § 2241(c) and 18 U.S.C. § 2245(2)(c).

In count 4, Chiquito was charged with engaging in a sexual act, on or between about April 1, 1992 and September 30, 1992, with Jane Doe, an Indian female under the age of 12 years, within the exterior boundaries of the Navajo Indian Reservation, in

McKinley County, in the State of New Mexico, in violation of 18 U.S.C. § 1153, 18 U.S.C. § 2241(c) and 18 U.S.C. § 2245(2)(A). Each count was based on a different incident.

On May 12, 1995, a jury convicted Chiquito on all four counts. On January 26, 1996, the district court sentenced him to imprisonment for 262 months to be followed by five years of supervised release.[1] Chiquito appeals his conviction and sentence. We affirm.

The only issue on appeal concerns the testimony of the last government witness, Valerie Lee, a social worker with the Navajo Tribe Division of Social Services. It was the intent of the government to qualify Ms. Lee as an expert witness. It would appear, though we are not sure, that the prosecution intended to elicit from Ms. Lee, *inter alia,* that Jane Doe fit the "profile" of a sexually abused child. Be that as it may, Ms. Lee, on direct examination, testified that she had worked for the Navajo Tribe Division of Social Services for about one and one-half years, that she had a masters degree in social work and had been "working in the field of child sexual abuse for about four years." After bringing out additional background information concerning Ms. Lee, including the fact

---

[1]The probation department set Chiquito's base offense level at 43 and his criminal history category as III, which, under the Sentencing Table, set Chiquito's guideline range at imprisonment for life. The district court, over the government's objections, reduced Chiquito's base offense level to 38 and also lowered his criminal history category to II, which had a guideline range of imprisonment for 262 to 327 months. Chiquito was sentenced on courts 1 and 2 to imprisonment for 120 months, and on courts 3 and 4 to imprisonment for 262 months, all to be served concurrently.

that she previously had testified in both tribal and state courts "as an expert in the areas of social work and child abuse," the government asked the district court to qualify Ms. Lee as an expert witness, thereby entitling her to express "opinions." Specifically, the prosecutor asked "that Ms. Lee be certified as an expert and allowed to testify in the areas of social work in the area of child sexual abuse." Defense counsel objected thereto, stating, *inter alia,* that the government had not given him notice that it intended to call an expert witness. In this regard, Fed. R. Crim. P. 16(a)(1)(E) reads as follows:

> **(E) Expert Witnesses.** At the defendant's request, the government shall disclose to the defendant a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. This summary must describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications.

Defense counsel conceded that he had not made any "request" as provided for in Fed. R. Crim. P. 16(a)(1)(E), but instead relied on a local rule of court which provides, in essence, that a "defendant is deemed to request discovery unless a waiver is filed . . . ." It was agreed that counsel had not filed such a waiver.

The district court denied the government's request that Ms. Lee be qualified as an expert witness. In so doing, the district court indicated that there was a possible conflict between Fed. R. Crim. P. 16(a)(1)(E) and the above-referenced local rule, but that he was denying the government's request that Ms. Lee be declared an expert witness "in order to make sure the defendant's rights are protected." The prosecutor indicated that she still

- 4 -

desired to question Ms. Lee regarding so-called "facts," as opposed to "opinions" from an expert witness, and the district court indicated that he would permit such inquiry.

When direct examination of Ms. Lee was resumed, in the presence of the jury, Ms. Lee testified that she first met Jane Doe on July 8, 1994, and that the purpose of the session was to "provide therapy treatment, counseling for her" and, incidentally, to prepare Jane Doe for testifying at trial. Ms. Lee went on to testify that she had twelve sessions with Jane Doe, once a week for one hour a session. It was brought out, without objection, that Ms. Lee had worked with about 100 children "in child sexual abuse cases" which involved, *inter alia*, "court preparation" for children who were going to testify in court proceedings. Without objection, Ms. Lee also testified that Jane Doe, in her sessions with Ms. Lee, tended to "minimize what happened." Ms. Lee further testified, again without objection, that Jane Doe explained that she waited so long to report the abuse inflicted on her by Chiquito because she was "afraid" and "fearful."

The next question proposed to Ms. Lee was as follows: 'In working with . . . [Jane Doe], have you found any indications in your experience with her of whether she's truthful?" Defense counsel objected to this question. The district court admonished the prosecutor to "avoid opinion testimony," but overruled the objection and counsel's additional request for a mistrial. The prosecutor's next question, slightly changed, was as follows: "in your dealing with . . . [Jane Doe], your personal dealing with her, do you see any indication that she was lying?" To this question, Ms. Lee simply replied "No."

Similar follow-up questions established that, so far as Ms. Lee was concerned, based on her twelve sessions with Jane Doe, the latter was "cooperative," neither "hostile" nor "rebellious," nor prone to "over-exaggerate," and that she knew "the difference between right and wrong."

Ms. Lee also testified that she knew some, but not much, about Jane Doe's relationship with her natural mother, Marilyn Livingston. Counsel primarily limited his cross examination of Ms. Lee to inquiring about the relationship between herself and Marilyn Livingston, which inquiry was brief and revealed nothing of great import.

As indicated, the only matter raised on appeal relates to the testimony of Ms. Lee. Counsel argues that the effect of Ms. Lee's testimony was to bolster the testimony previously given by Jane Doe.[2]

Background facts suggest to us that Ms. Lee's testimony played only a minor role in this five day jury trial and that any possible error was, under the circumstances, harmless error, not requiring reversal. Fed. R. Crim P. 52(a). *See United States v. Moreno,* 94 F.3d 1453 (10th Cir. 1996); *United States v. Olivo,* 80 F.3d 1466 (10th Cir. 1996); *United States v. Flanagan,* 34 F.3d 949 (10th Cir. 1994).

Marilyn Livingston, Jane Doe's natural mother, separated from Jane Doe's natural father in about 1990, and they eventually were divorced. Thereafter, Marilyn Livingston

---

[2]Jane Doe was 11 years of age at the time of the alleged assaults on her by Chiquito and was 14 years of age at the time of trial.

and her boyfriend, Bill Chiquito, Jr., together with Jane Doe and other siblings, lived on a Navajo Indian Reservation in New Mexico. It would appear that Jane Doe actually lived with her maternal grandmother in a house located in the same complex as the "hogan" where Marilyn Livingston and Chiquito resided. As indicated, the defendant's "assaults," which formed the basis for the four count indictment, occured between April 1, 1992 and September 30, 1992. In 1994, Jane Doe moved in with her natural father, and shortly thereafter sought out her junior high school counselor and told her of the several assaults. The counselor, in turn, reported the case to Social Services.

About a week later, FBI Agent Greg Calles interviewed Jane Doe, and then contacted Bill Chiquito, Jr. At trial, Agent Calles testified that Chiquito verbally admitted that he had at least two sexual contacts with Jane Doe, and that later Chiquito admitted the same in writing in the presence of a fellow FBI agent, David Oldham. According to the agents, Chiquito stated that Jane Doe was the "aggressor" and that she said she wanted "sex."

At trial, the government called five witnesses: the junior high school counselor who first had contact with Jane Doe about the matter, two FBI agents who testified about the statements made to them by Chiquito, Jane Doe who testified about the assaults made on her by Chiquito, and Ms. Valerie Lee.

In his opening statement to the jury, defense counsel suggested that Jane Doe was "lying" when she accused Chiquito of sexually abusing her and that, in fact, there were no

such assaults.  And that was the essence of the defense.  Chiquito testified in his own behalf and denied ever assaulting Jane Doe.  He also denied making certain statements attributed to him by the two FBI agents, and tried to explain other statements attributed to him.  Marilyn Livingston, and other members of her family, also testified, stating that they knew nothing about any such assaults and generally portrayed Jane Doe as a "troublesome" young girl who "rebelled" at having to do household chores and was not always "truthful."  That was the state of the record.

At the very outset of the trial, defense counsel put in issue Jane Doe's credibility.  As mentioned, in his opening statement to the jury, counsel suggested that Jane Doe was "lying" and flatly said that "every claim of sexual abuse" against Chiquito was "false."  As indicted, Ms. Lee had twelve one-hour counseling sessions with Jane Doe.  She was then asked on direct examination by the prosecutor "in your dealing with . . . [Jane Doe], your personal dealing with her, do you see any indication that she was lying?"  To this question, Ms. Lee simply replied "No."  It is difficult for us to see how this one-word answer by Ms. Lee constitutes reversible error.  If there was any possible error, it would seem to us that it would clearly be harmless error.[3]

---

[3]Under Federal Rules of Evidence 701, a lay witness, as opposed to an expert witness, may testify in the form of opinions or inferences, but only if such testimony is "rationally based on the perception of the witness" and if such would be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

The particular "answer" given by Ms. Lee, which counsel primarily relies on for reversal, is that in her twelve one-hour counseling sessions Ms. Lee saw no indication that Jane Doe was lying. To a lesser extent, counsel also relies on the answers given by Ms. Lee, to the effect that in her counseling sessions with Jane Doe, the latter was "cooperative," being neither "hostile" nor "rebellious," nor prone to "over-exaggerate," and that she knew "the difference between right and wrong." In our view, such responses do not dictate a different result.

In this general regard, it should be remembered that counsel's theory of the case was that Chiquito never assaulted Jane Doe in any manner, that Jane Doe was lying and her claims were "false," and that she was a "troublesome child" who "rebelled" at having to do household chores. Viewed in this context, Ms. Lee's rather limited testimony about her impression of Jane Doe based on twelve hours of therapy does not justify reversal.

Judgment affirmed.[4]

---

[4]That Chiquito was sentenced to imprisonment for 262 months (21 years and 10 months) may seem, to some, a bit draconian. Such, however, would not convert "harmless error" into "reversible error." Rather, the quarrel would be with the Sentencing Guidelines.